IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| RICHARD R. RICHARD, JR., on behalf of himself and all other similarly situated, | § § § § | |
| Plaintiffs, | § § | CASE NO. 500 CV 008 (DF) |
| vs. | § § | |
| HOECHST CELANESE CHEMICAL GROUP, INC.; SHELL OIL COMPANY D/B/A SHELL CHEMICAL COMPANY; HOECHST CELANESE CORPORATION; and E.I. DUPONT DE NEMOURS & COMPANY, | § § § § § § § § | |
| Defendants. | § § | |

**HOECHST CELANESE CORPORATION'S AND
HOECHST CELANESE CHEMICAL GROUP, INC.'S
RENEWED MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**



**Table of Contents**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.    The Court Should Dismiss Plaintiff's RICO Claims . . . . . . . . . . . . . . . 7

         1.    Unable To Plead Proximate Cause, Plaintiff Lacks Standing To
             Bring A RICO Claim Against Celanese . . . . . . . . . . . . . . . . . . . . . 7

         2.    Plaintiff Has Failed To Plead RICO With Adequate Particularity
             As Required Under Rule 9(b) Of The Federal Rules Of Civil
             Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

         3.    Plaintiff Has Failed To Plead That Celanese Engaged In Mail Or
             Wire Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         4.    Plaintiff Has Not Adequately Plead An "Enterprise" . . . . . . . . . 14

         5.    Plaintiff Has Failed To Plead A Pattern Of Racketeering
             Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

         6.    Plaintiff Concedes, As He Must, That He Cannot State An
             "Investment Injury" Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

         7.    Plaintiff Has Failed To Plead Properly A RICO Conspiracy
             Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

     B.    The Court Should Dismiss Plaintiff's Claim For False
         Advertising Or Promotion Under Section 43(a) Of The Lanham Act . . . 19

         1.    Plaintiff Lacks Standing To Prosecute A
             Claim Under Section 43(a) Of The Lanham Act . . . . . . . . . . . . 19

         2.    Plaintiff Has Not, As He Cannot, Identify Any False
             Or Misleading Representation Made By Celanese
             In Connection With Commercial Advertising
             Or Promotion Of Polybutylene Plumbing . . . . . . . . . . . . . . . . 20

C.  Plaintiff's Claim Against Celanese For Alleged Violation Of The Due
    Process Clause Of The United States Constitution Is Wholly
    Meritless ................................................ 22

    1.  A Private Citizen Such As Celanese Cannot Violate
        The Due Process Clause Of The United States Constitution .... 23

    2.  The Anti-Injunction Act Prohibits Plaintiff From
        Seeking To Enjoin Defendants From Asserting
        The Preclusive Effect Of The Final Judgment In Cox ......... 23

    3.  Under The Rooker/Feldman Doctrine, The Court
        Lacks Subject Matter Jurisdiction To Review A
        Final State Court Judgment .......................... 25

    4.  Plaintiff's Claim Against Celanese For Alleged Violation
        Of The Due Process Clause Fails To Provide A Basis
        For Federal Subject Matter Jurisdiction ................... 27

D.  The Court Should Not Exercise Supplemental
    Jurisdiction Over Plaintiff's Pendent State Law Claims ............. 28

III.  CONCLUSION ...................................................... 29

## Table Of Authorities

Cases

Amstadt v. United States Brass Corp.,
919 S.W.2d 644 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Atkinson v. Anadarko Bank & Trust Co.,
808 F.2d 438 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs,
398 U.S. 281 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Bacon v. Southwest Airlines Co.,
997 F. Supp. 775 (N.D. Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Barrus v. Sylvania,
55 F.3d 468 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Bender v. Prudential Ins. Co. of America,
860 F. Supp. 803 (M.D. Ala. 1994 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Bishop v. Corbitt Marine Ways, Inc.,
802 F.2d 122 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Bishop v. Federal Intermediate Credit Bank of Wichita,
908 F.2d 658 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Bivens Gardens Office Bldg. v. Barnett Banks,
140 F.3d 898 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Bonton v. Archer Chrysler Plymouth, Inc.,
889 F. Supp. 995 (S.D. Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Brass v. Allnet Communications Servs., Inc.,
606 F. Supp. 401 (N.D. Ill. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Burzynski,
989 F.2d 733 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Calcasieu Marine Nat'l Bank v. Grant,
943 F.2d 1453 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Callahan v. A.E.V., Inc.,
182 F.3d 237 (3rd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Carpenter v. Wichita Falls Indep. School Dist.,
44 F.3d 362 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Chevron Chem. v. Voluntary Purchasing Groups, Inc.,
659 F.2d 695 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Colligan v. Activities Club of New York, Ltd.,
442 F.2d 686 (2d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.,
911 F.2d 242 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Corpus Christi Taxpayer's Associate v. City of Corpus Christi,
858 F.2d 973 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Cox, et al. v. Shell Oil Company, et al.,
No. 18,844, 1995 WL 775363
(Chancery Court, Obion County, Tenn. Nov. 17, 1995) . . . . . . . . . . . . . . . . . . . . . . . 6

Crowe v. Henry,
43 F.3d 198 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

Davenport v. State Farm Mut. Automobile Ins. Co.,
756 S.W.2d 678 (Tenn. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Delta Truck & Tractor, Inc. v. J.I. Case Co.,
855 F.2d 241 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

District of Columbia Court of Appeals v. Feldman,
460 U.S. 462 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Ditri v. Coldwell Banker Residential Affiliates, Inc.,
954 F.2d 869 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Elliott v. Foufas,
867 F.2d 877 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

Engstrom v. First Nat'l Bank of Eagle Lake,
47 F.3d 1459 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

First Nat'l Bank of Polk County v. Gross,
912 S.W.2d 147 (Tenn. Ct. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Fogie v. Thorn Americas, Inc.,
190 F.3d 889 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Ford Motor Co. Bronco II Prods. Liab. Litig., 1995 WL
491155 (E.D. La. Aug. 15, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

GICC Capital Corp. v. Tech. Fin. Group,
67 F.3d 463 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,
134 F.3d 133 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Grossbard v. President Container, Inc.,
840 F. Supp. 296 (S.D.N.Y. 1993), aff'd, 41 F.3d 1501 (2d Cir. 1994) . . . . . . . . . 23

Hecht v. Commerce Clearing House, Inc.,
897 F.2d 21 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Heden v. Hill,
937 F. Supp. 1230 (S.D. Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

Hill v. Martin,
296 U.S. 393 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Holmes v. Securities Investor Prot. Group,
503 U.S. 258 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

Howard v. America Online,
208 F.3d 741 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Kamilewicz v. Bank of Boston Corp.,
92 F.3d 506 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Keith v. Stoelting, Inc.,
915 F.2d 996 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Khurana v. Innovative Health Care Systems., Inc.,
130 F.3d 143 (5th Cir. 1997), vacated as moot, 119 S. Ct. 442 (1998) . . . . . . . . . . 10

Laborers Local 17 v. Phillip Morris,
191 F.3d 229 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lampkin-Asam v. Supreme Court of Florida,
601 F.2d 760 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Landry v. A-Able Bonding, Inc.,
75 F.3d 200 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Lightning Lube, Inc. v. Witco Corp.,
4 F.3d 1153 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lowe v. Ingalls Shipbuilding,
723 F.2d 1173 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Manax v. McNamara,
842 F.2d 808 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Martin v. Drummond Coal Co., Inc.,
756 F. Supp. 524 (N.D. Ala. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Matsushita Electric Indus. Co., Ltd. v. Epstein,
516 U.S. 367 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

McClelland v. Gronwaldt,
155 F.3d 507 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

McKee v. Pope, Ballard, Shepard & Fowle, Ltd.,
604 F. Supp. 927 (N.D. Ill. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Merrell Dow Pharmaceuticals Inc. v. Thompson,
478 U.S. 804 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Miranda v. Ponce Federal Bank,
948 F.2d 41 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Montesano v. Seafirst Commercial Corp.,
818 F.2d 423 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mylan Labs., Inc. v. Matkari,
7 F.3d 1130 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

National Enters., Inc. v. Mellon Fin. Servs. Corp.,
847 F.2d 251 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Neitzke v. Williams,
490 U.S. 319 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Old Time Enters. v. International Coffee Corp.</u>,
862 F.2d 1213 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Pelfresne v. Village of Williams Bay</u>,
865 F.2d 877 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Phillips Petroleum Co. v. Texaco, Inc.</u>,
415 U.S. 125 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

<u>Pierre v. Jordan</u>,
333 F.2d 951 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

<u>Proctor & Gamble Co. v. Amway Corp.</u>,
242 F.3d 539 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

<u>Reves v. Ernst & Young</u>,
507 U.S. 170, 113 S.C. 1163 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Rooker v. Fidelity Trust Co.</u>,
263 U.S. 413 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>Seattle-First Nat'l Bank v. Carlstedt</u>,
800 F.2d 1008 (10th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Sedima, S.P.R.L. v. Imrex Co.</u>,
473 U.S. 479 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

<u>Serbin v. Ziebart Int'l Corp., Inc.</u>,
11 F.3d 1163 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Seven-Up Co. v. Coca-Cola Co.</u>,
86 F.3d 1379 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

<u>Signal Properties, Inc. v. Farha</u>,
482 F.2d 1136 (5th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Snider v. City of Excelsior Springs, Missouri</u>,
154 F.3d 809 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

<u>St. Paul Mercury Ins. Co. v. Williamson</u>,
224 F.3d 426, 447 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Steamfitters Local Union v. Phillip Morris, Inc.</u>,
171 F.3d 912 (3rd Cir. 1999), <u>cert. denied</u>, 120 S. Ct. 844 (2000) . . . . . . . . . . . . . . 10

Summit Properties Inc. v. Hoechst Celanese Corp., et al.,
214 F.3d 556 (5th Cir.), cert. denied, 121 S. Ct. 896 (2001)  . . . . . . . . . . . . . . passim

Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,
975 F.2d 1134 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Ttea v. Ysleta Del Surety Pueblo,
181 F.3d 676 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Vemco, Inc. v. Camardella,
23 F.3d 129 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Walker v. Nationwide Ins. Co.,
813 S.W.2d 135 (Tenn. Ct. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Miscellaneous

13B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction
§ 3566 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

14B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction
§ 3722 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

COME NOW, Defendants Hoechst Celanese Corporation (now known as CNA Holdings, Inc.) and Hoechst Celanese Chemical Group, Inc. (now known as Celanese Ltd.) (collectively "Celanese"), and file their Renewed Motion to Dismiss Plaintiff's Second Amended Complaint ("Second Amended Compl.") pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

This motion is based upon Celanese's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint, annexed hereto, all pleadings and other papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Respectfully submitted,

PATTON, TIDWELL & SANDEFUR LLP

Nicholas H. Patton
State Bar No. 15631000
Robert W. Schroeder III
4605 Texas Blvd.
P.O. Box 5398
Texarkana, Texas 75505
(903) 792-7080
(903) 792-8233 (facsimile)

---

[1] By order dated February 8, 2001 ("Feb. 8 Order"), the Court ordered plaintiff to file a civil RICO case statement and denied, without prejudice to refile, Celanese's Motion to Dismiss Plaintiff's Second Amended Complaint.

## **Preliminary Statement**

By this product liability action, plaintiff is attempting to disrupt a five year old, $1 billion nationwide class action settlement, which provides repairs of leaking polybutylene (i.e., plastic) plumbing and reimbursement for property damage caused by the leaks. This settlement received final approval in 1995 from a Tennessee state court, and approximately $900 million has already been spent under the settlement (much of it in Texas). To the extent plaintiff has leaking polybutylene plumbing, plaintiff could already have had that plumbing replaced and been reimbursed for any damages under the nationwide settlement.

Approximately one year ago, each of the defendants moved to dismiss plaintiff's original complaint. Instead of responding to these motions, plaintiff filed a first amended complaint. Defendants moved to dismiss plaintiff's first amended complaint, and in response, plaintiff again amended his complaint. Defendants moved to dismiss plaintiff's second amended complaint. In light of defendants' motions, the Court ordered plaintiff to file a civil RICO case statement ("RICO Statement") to determine "whether Plaintiff[] [has] asserted claims under RICO that possess the required level of particularity." (Feb. 8 Order at 2.)

Plaintiff has now filed his RICO Statement. As demonstrated below, however, neither the second amended complaint nor plaintiff's RICO Statement cure the pleading defects in the complaint. To the contrary, the RICO Statement confirms that plaintiff cannot state a civil RICO claim against Celanese, much less state such a claim with adequate particularity. Indeed, the RICO Statement does not refer to or cite a single specific representation plaintiff supposedly received or otherwise relied upon from Celanese. As such, this action is subject to dismissal.

First, plaintiff's civil RICO claims fail under settled Fifth Circuit authority for failure to

2

plead detrimental reliance on any alleged representation made by Celanese.  Absent such pleading, plaintiff cannot satisfy the proximate cause requirement of civil RICO.

Specifically, in plaintiff's recently filed RICO Statement, plaintiff admits that he did not receive, much less rely upon, any statements made by Celanese or any other defendant regarding polybutylene plumbing.  Instead, plaintiff alleges that defendants committed mail and wire fraud by making certain statements regarding polybutylene plumbing to third-parties (i.e., code bodies, manufacturers and plumbers), but not to plaintiff.[2]

These are the very same allegations of indirect representations to third-parties which the Fifth Circuit ruled in Summit Properties Inc. v. Hoechst Celanese Corp., et al., 214 F.3d 556 (5th Cir. 2000), cert. denied, 121 S. Ct. 896 (2001) were insufficient to state a RICO claim.  The Summit decision is directly on point, as that case involved the dismissal of identical RICO claims, based on identical allegations, by identically situated homeowners, in a polybutylene plumbing action against Celanese, defendant Shell Oil Company ("Shell"), and defendant E.I. du Pont de Nemours & Company ("DuPont").

As in Summit, plaintiff's civil RICO claims against Celanese are subject to dismissal because, among other things:

- Plaintiff fails to plead, much less prove, proximate cause (i.e., that he received and relied to his detriment on any representation made by Celanese concerning polybutylene plumbing or polybutylene plumbing components);

- Plaintiff fails to plead civil RICO against Celanese with any, much less adequate, particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure;

---

[2]     Incredibly, plaintiff now admits that the only representations which he purportedly received regarding polybutylene plumbing were made (if at all) by the prior owner of his mobile home, and not by Celanese or any other defendant.

3

- Plaintiff does not, as he cannot, plead that Celanese engaged in any mail or wire fraud;

- Plaintiff fails utterly to satisfy the requirements for pleading an "enterprise";

- Plaintiff does not, as he cannot, plead that Celanese engaged in a "pattern of racketeering activity";

- Plaintiff concedes that he does not, as he cannot, state an "investment injury"; and

- Plaintiff does not, as he cannot, properly plead a RICO conspiracy claim.

Second, in another effort to create federal subject matter jurisdiction, plaintiff has amended his original complaint to add a claim for false advertising or promotion under Section 43(a) of the Lanham Act. However, it is well settled that consumers, like plaintiff here, lack standing to prosecute a claim for false advertising or promotion under the Lanham Act. Moreover, plaintiff has not identified any false or misleading representation made by Celanese in connection with commercial advertising or promotion of polybutylene plumbing.

Third, as in the original complaint, plaintiff continues to assert an alleged violation of the Due Process Clause of the United States Constitution. According to the complaint, plaintiff anticipates that defendants may assert the preclusive effect of the final judgment in the Tennessee nationwide class action settlement as a bar to plaintiff's claims. In response to this anticipated defense, plaintiff claims he may argue that his due process rights were somehow violated in the Tennessee action. As relief for this purported due process claim, plaintiff seeks an injunction barring defendants from asserting the preclusive effect of the Tennessee judgment.

However, plaintiff's due process claim is wholly meritless, as it fails to state a claim upon which relief can be granted and it fails to provide a basis for federal subject matter jurisdiction. Celanese is a private citizen not acting under color of state, and thus cannot violate plaintiff's due

4

process rights.  Moreover, the injunctive relief sought by plaintiff would violate the clear dictates of both the Anti-Injunction Act and the Rooker/Feldman doctrine.  Further, under the "well-pleaded complaint rule," an anticipated defense, much less an anticipated response to an anticipated defense, cannot create federal subject matter jurisdiction.

Finally, because all of plaintiff's federal claims are subject to dismissal, the Court should not exercise supplemental jurisdiction over plaintiff's pendent state law claims.

# I.

# FACTS

This action is a product liability action in which plaintiff seeks -- for himself and on behalf of a putative class supposedly consisting of millions of individuals nationwide -- to recover economic damages allegedly arising from polybutylene plumbing installed in plaintiff's residence. (See Second Amended Compl. ¶¶ 1, 4, 29.)

This action was not brought against any of the various companies that designed, manufactured, sold or installed the different types of polybutylene plumbing and their components.  Rather, plaintiff has sued only some of the raw material suppliers -- such as Shell, Celanese,[3] and DuPont -- which provided the resins used by certain companies (none of which is a defendant here) in the manufacture of certain plumbing components in some types of polybutylene

---

[3]      Hoechst Celanese Corporation is a raw material supplier of a variety of materials and plastics, including a plastic resin called Celcon, which, among its hundreds of other uses, was used by third-parties (none of which is a defendant here) in the manufacture of some parts in some types of polybutylene plumbing.  (See id. ¶ 10.)  Hoechst Celanese Chemical Group, Inc. is a commodity or bulk chemical supplier; it did not manufacture or otherwise supply Celcon, and thus it has no connection whatsoever to polybutylene plumbing.  For this reason, as well as the other reasons set forth in this memorandum, Hoechst Celanese Chemical Group, Inc. should be dismissed from this action.

plumbing. (Id. at ¶¶ 5-10.)

Although Hoechst Celanese Corporation did not design, manufacture, market, advertise, sell, promote or install polybutylene plumbing, in 1995 it and Shell agreed -- without admitting liability -- to a polybutylene plumbing national class action settlement in Cox, et al. v. Shell Oil Company, et al., No. 18,844, 1995 WL 775363 (Chancery Court, Obion County, Tenn. Nov. 17, 1995) ("Cox").[4] (Id. at ¶ 19.) That settlement received final approval from the Tennessee state court in November 1995, and all appeals from that final order and judgment were dismissed in 1996.

Under the Cox nationwide settlement, these companies agreed to, among other things, contribute a minimum of $950 million (now closer to $1 billion due to contributions from other parties) to provide relief to homeowners nationwide (including tens of thousands in Texas) affected by leaking polybutylene plumbing. As a result of this settlement, hundreds of thousands of homeowners nationwide (including tens of thousands of residents of Texas) have received free replacement of their leaking polybutylene plumbing and reimbursement for property damage caused by the leaks. Despite the availability of relief under the Cox nationwide class action settlement and plaintiff's failure to even attempt to opt-out of this settlement, plaintiff has instead chosen to file this action.

---

[4]     Although not relevant to this motion, the Cox final order and judgment does bar plaintiff's claims, as it is beyond genuine dispute that property owners, like plaintiff here, who have not opted out of the Cox settlement class may not prosecute lawsuits against Celanese. See Matsushita Electric Industrial Co., Ltd. v. Epstein, 516 U.S. 367, 373-74 (1996) ("The judgment of a state court in a class action . . . is presumptively entitled to full faith and credit under the express terms of the Act").

## II.

## ARGUMENT[5]

### A.    The Court Should Dismiss Plaintiff's RICO Claims

Plaintiff's RICO claims are subject to dismissal on numerous grounds, as it is clear that homeowners, such as plaintiff here, have no federal RICO claims against remote, raw material suppliers such as Celanese.  For these very reasons, the Fifth Circuit recently affirmed the dismissal of nearly identical RICO claims against Celanese and the other defendants here brought by a similarly situated plaintiff in a case in the United States District Court for the Southern District of Texas.  See Summit Properties Inc. v. Hoechst Celanese Corp., et al., 214 F. 3d 556 (5th Cir. 2000), cert. denied, 121 S. Ct. 896 (2001). The result should be the same here.[6]

### 1.    Unable To Plead Proximate Cause, Plaintiff Lacks Standing To Bring A RICO Claim Against Celanese

A plaintiff has standing to assert a RICO claim only if he can allege, unlike here, an injury "by reason of" (i.e., directly caused by) a violation of the RICO Act.  Holmes v. Securities

---

[5]    On a motion to dismiss an action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, the motion should be granted where, as here, the plaintiff fails to state a claim upon which relief can be granted.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995) (same); Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992) (same).  While the well-pleaded allegations of the complaint must be accepted as true for purposes of this motion only, "[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations."  Elliott v. Foufas, 867 F.2d 877, 881 (5th Cir. 1989).

[6]    A recent decision by the Fifth Circuit notes that "in Summit we ruled that a target of a fraud that did not itself rely on the fraud may pursue a RICO claim if the other elements of proximate causation are present."  Proctor & Gamble Co. v. Amway Corp., 242 F.3d 539, 564-65 (5th Cir. 2001).  This decision is of no assistance to plaintiff.  The so-called target "exception" was not applicable in Summit, which concerned plaintiffs identically situated to the plaintiff in this case; thus, that exception is also plainly inapplicable here.

<u>Investor Protection Group</u>, 503 U.S. 258, 270-74 (1992). <u>See also</u> <u>Sedima, S.P.R.L. v. Imrex</u> <u>Co.</u>, 473 U.S. 479, 496 (1985) ("A RICO plaintiff only has standing by [reason of] the conduct constituting the violation"). The Supreme Court in <u>Holmes</u> made clear that the "by reason of" language in RICO requires a causal connection between the predicate mail or wire fraud and plaintiff's injury that includes proximate causation. 503 U.S. at 265-68.

The predicate acts upon which plaintiff's civil RICO claims are based consist only of alleged instances of mail and wire fraud. (Second Amended Compl. ¶¶ 67, 69, 70.) However, as the Fifth Circuit recently held in <u>Summit</u>, where, as here, the alleged civil RICO claim is predicated solely on mail or wire fraud, plaintiff must plead and prove detrimental reliance upon a representation made by the defendant in order to show proximate cause -- a showing plaintiff has not made and cannot make here.

> Today we are invited to read RICO as establishing a federal products liability scheme complete with treble damages and attorney fees for the benefit of end-users of defective products who never relied on manufacturers' alleged misrepresentations of product quality. We are unpersuaded that RICO can be extended so far by such a marriage of distinct duties and liability regimes.

<u>Summit</u>, 214 F.3d at 557; <u>see also</u> <u>id.</u> at 562 ("In sum, when civil RICO damages are sought for injuries resulting from fraud, a general requirement of reliance by the plaintiff is a commonsense liability limitation"); <u>Heden v. Hill</u>, 937 F. Supp. 1230, 1243 (S.D. Tex. 1996) (same).

Unable to avoid this settled and controlling rule, plaintiff simply asserts in his RICO Statement that "Plaintiff actually relied on Defendants' misrepresentations." (RICO Statement at 16.) However, plaintiff does not (because he cannot) allege any specific instance where Celanese or any other defendant made <u>any</u> representation to plaintiff or any other homeowner regarding polybutylene plumbing or components thereof. Plainly, plaintiff's vague and conclusory assertion

is insufficient to plead detrimental reliance.  See Summit, 214 F.3d at 562 ("To hold otherwise would allow the threat of treble damages and attorney fees to infiltrate garden variety products liability cases whenever marketing promotions touted the merits of the products, even if no plaintiff relied on those representations").

Plaintiff attempts to plead detrimental reliance by alleging that Celanese made certain fraudulent misrepresentations to third parties such as code bodies, municipal agencies, wholesalers, contractors and installers. (Second Amended Compl. ¶¶ 44 & 63(a); RICO Statement at 6-7.)  Faced with nearly identical allegations of purported misrepresentations to third-parties by Shell, Celanese and DuPont, the Fifth Circuit in Summit held that the plaintiffs had failed to state a cognizable RICO claim against Celanese:

> The causal connection between a misrepresentation and a subsequent harm . . . vanishes once the product travels beyond the entity who actually relied on the representation when making the purchasing decision.

214 F.3d at 560.

Indeed, plaintiff's assertion of reliance is belied by his admission that the only alleged representation he received regarding polybutylene plumbing was supposedly made by the prior owner of his mobile home, and not by Celanese or any other defendant. (RICO Statement at 13-14.)  Specifically, in his RICO Statement, plaintiff alleges for the first time that the prior owner of his mobile home told him that it was plumbed with polybutylene, that polybutylene was an excellent and durable product,[7] and "[i]n reliance on this false representation," plaintiff purchased

---

[7]     Plaintiff alleges that the prior owner made this representation based upon certain, unspecified "fraudulent promotional material promulgated" by defendants. (RICO Statement at 13-14.)  However, plaintiff does not -- because he cannot -- refer to any specific promotional material, oral or written, received by the prior owner from Celanese or any other defendant regarding polybutylene plumbing or components thereof.

the home. (Id.) However, even if the prior owner allegedly relied on representations from defendants, the claim still fails. As the Summit court made clear:

> even if intermediary builders, plumbers, code officials, or prior owners relied on the defendants' alleged misrepresentations when choosing to use or approve PB plumbing, that does not tell us whether the defendants' fraud proximately caused the plaintiffs' injuries ... At best, any fraud during the sale of those products proximately injured only those initial purchasers who relied on the alleged misrepresentations.

214 F.3d at 560 (emphasis added).

The Summit court's ruling that remote and indirect civil RICO claims, such as those asserted here, do not satisfy the direct injury requirement under civil RICO is in accord with numerous other court's rulings. See, e.g., Steamfitters Local Union v. Phillip Morris, Inc., 171 F.3d 912, 921 (3rd Cir. 1999), cert. denied, 120 S. Ct. 844 (2000) (funds too indirect and remote to recover for alleged harm to smokers).[8]

In addition, as the Holmes Court ruled, proximate cause cannot be properly plead where, as here, numerous intervening acts and decisions of third parties necessarily occurred between the alleged actions of defendants and plaintiff's alleged injury. 503 U.S. at 272-73. See also Khurana v. Innovative Health Care Systems, Inc, 130 F.3d 143 (5th Cir. 1997), vacated as moot, 119 S. Ct. 442 (1998) (affirming dismissal of civil RICO claims where numerous intervening causes

---

[8]   See also National Enters., Inc. v. Mellon Fin. Servs. Corp., 847 F.2d 251, 254 (5th Cir. 1988) ("In a RICO case an indirectly injured party should look to the recovery of the directly injured party, not to the wrongdoer for relief") (citation omitted); Laborers Local 17 v. Phillip Morris, 191 F.3d 229, 239-40 (2d Cir. 1999) (healthcare funds' claims of injuries (payment of medical benefits) flowing from tobacco companies' fraudulent misrepresentations to individual smokers held too remote); Callahan v. A.E.V., Inc., 182 F.3d 237, 264 (3rd Cir. 1999) (local beer distributorships' complaint of competitive disadvantage resulting from defendants' misrepresentations to the Pennsylvania Liquor Control Board held too remote); Bivens Gardens Office Bldg. v. Barnett Banks, 140 F.3d 898, 906 (11th Cir. 1998) (losses suffered by company's stakeholders as a result of racketeering activity against the company held too remote).

existed). Here, there are numerous potential intervening causes between the alleged

misrepresentations by defendants to third parties and plaintiff's claimed injuries. For example, as

for the code bodies, numerous intervening causal factors other than the alleged

misrepresentations, such as independent investigations, inquiries, tests and economic concerns,

may have influenced the decision to grant approval for polybutylene plumbing. Likewise, with

respect to developers, builders and plumbers, numerous intervening causal factors, such as cost,

product availability, ease of installation and construction requirements may have influenced their

purchasing decisions, wholly apart from the alleged misrepresentations.[9] See Summit, 214 F. 3d

at 560 ("As a product travels in the stream of commerce, inherent defects are carries with it, but

fraudulent statements are not . . . The causal connection between a misrepresentation and a

subsequent harm . . . vanishes once the product travels beyond the entity who actually relied on

the representation when making the purchasing decision").

---

[9]       The Texas Supreme Court decision in Amstadt v. United States Brass Corp., 919
S.W.2d 644, 651 (Tex. 1996), a polybutylene plumbing case brought under the Texas Deceptive
Trade Practices Act, illustrates the eroding effect that these intervening acts and decisions have on
the chain of causation. There, like here, property owners alleged that Shell made
misrepresentations to code bodies and builders, but the court rejected the claim that the alleged
misrepresentations were necessarily the cause of their injury: "As was the case with Celanese, the
facts do not support the conclusion that Shell's misrepresentations were made in connection with
the relevant consumer transactions, the purchase of homes . . . . [A]ny information provided by
Shell was subject to independent evaluation by builder code officials and by homebuilders." Id.
(emphasis added).

11

## 2. Plaintiff Has Failed To Plead RICO With Adequate Particularity As Required Under Rule 9(b) Of The Federal Rules Of Civil Procedure

As the Court recognized (Feb. 8 Order at 2), civil RICO claims, like fraud claims in general, must be stated with adequate particularity and a high degree of specificity. See Bonton v. Archer Chrysler Plymouth, Inc., 889 F. Supp. 995, 1004 (S.D. Tex. 1995) (citing Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1138 (5th Cir. 1992)). In such cases, the pleading must satisfy both the RICO Act and Rule 9(b) of the Federal Rules of Civil Procedure:

> We find that most of the alleged wrongs are not pleaded with sufficient particularity to constitute the RICO predicate act of wire fraud or mail fraud. Rule 9(b) requires particularity in pleading the "circumstances constituting fraud." This particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim as well.

Tel-Phonic, 975 F.2d at 1138.[10]

To meet this requirement, plaintiffs must "identify particular defendants with whom they dealt directly"; "designate the occasions on which affirmative statements were allegedly made to them -- and by whom"; and "designate what affirmative misstatement or half-truths were directed to them -- and how". Seattle-First Nat'l Bank v. Carlstedt, 800 F.2d 1008, 1011 (10th Cir. 1986). In sum, to comply with Rule 9(b), plaintiffs must allege the time, place and contents of any allegedly false representations, as well as the identity of the person making the alleged misrepresentation and what he obtained thereby. See Keith v. Stoelting, Inc., 915 F.2d 996, 1000 (5th Cir. 1990); Bonton, 889 F.2d at 1004.

Here, despite the Court's order, plaintiff does not even attempt to comply with these basic

---

[10]     In addition, where, as here, plaintiff alleges a fraudulent scheme with multiple defendants, the pleading must inform each defendant of the specific fraudulent acts which allegedly constitute the basis of plaintiff's claim against that party. See, e.g., Brass v. Allnet Communications Servs., Inc., 606 F.Supp. 401, 405 (N.D. Ill. 1985); McKee v. Pope, Ballard, Shepard & Fowle, Ltd., 604 F.Supp. 927, 931 (N.D. Ill. 1985) (same). Plaintiff has failed to meet this pleading requirement.

pleading requirements in either his complaint or his RICO Statement. Indeed, both plaintiff's second amended complaint and plaintiff's RICO Statement are utterly devoid of any allegedly actionable RICO conduct on the part of anyone, much less Celanese specifically. Accordingly, plaintiff's RICO claims fail to satisfy the strict pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure or the RICO Act.

**3.     Plaintiff Has Failed To Plead That Celanese Engaged In Mail Or Wire Fraud**

Without any specifics whatsoever in either his RICO Statement or his complaint, plaintiff baldly asserts that Celanese committed acts of mail and wire fraud. (Second Amended Compl. ¶¶ 56, 63; RICO Statement at 15-16.) However, plaintiff's bald assertion is insufficient to state a claim for mail or wire fraud.

First, following the Supreme Court's decision in Holmes, 503 U.S. at 270-74, it is clear that to demonstrate proximate cause, pleading of detrimental reliance is required where, as here, mail or wire fraud is the predicate act in a civil RICO claim. See Summit, 214 F.3d 556. As demonstrated above (see supra pp. 7-11), plaintiff has failed utterly to plead detrimental reliance.

Second, plaintiff has not plead other essential elements of a mail or wire fraud claim. For example, it is well settled that "a RICO claim asserting mail fraud as a predicate act must allege how each act of mail fraud actually furthered the fraudulent scheme, who caused what to be mailed when, and how the mailing furthered the fraudulent scheme." Heden, 937 F. Supp. at 1243. However, plaintiff's second amended complaint fails to allege the time, place, and contents of any alleged false representations made by Celanese to any homeowner, much less plaintiff here.

4.    **Plaintiff Has Not Adequately Plead An "Enterprise"**

Plaintiff has also failed to plead the requisite elements of a RICO "enterprise." In order to establish a RICO "enterprise," plaintiff must plead specific facts that, among other things, demonstrate that: (i) the "enterprise" is an "ongoing organization"; (ii) the "enterprise" has an existence "separate and apart" from the "pattern of racketeering activity"; (iii) the RICO "enterprise" and the RICO "persons" are separate and distinct; and (iv) the various members of the "enterprise" "function as a continuing unit" with a hierarchical or consensual decision-making structure. See, e.g., Delta Truck & Tractor, Inc. v. J.I. Case Co., 855 F.2d 241, 243 (5th Cir. 1988); Atkinson v. Anadarko Bank & Trust Co., 808 F.2d 438, 440-41 (5th Cir. 1987) (holding that the culpable person cannot constitute the enterprise under §1962(c)); Bishop v. Corbitt Marine Ways, Inc., 802 F.2d 122, 123 (5th Cir. 1986) (RICO claim dismissed because RICO "person" and RICO "enterprise" were one and the same). Plaintiff has not met any of these requirements in either his RICO Statement or complaint.

First, plaintiff has failed utterly to plead "specific facts, not mere conclusory allegations" establishing the existence of an "ongoing" civil RICO "enterprise." Manax v. McNamara, 842 F.2d 808, 811 (5th Cir. 1988). See also Montesano v. Seafirst Commercial Corp., 818 F.2d 423, 426 (5th Cir. 1987) (same). In fact, plaintiff merely defines the "enterprise" as defendants entering into certain unspecified and unknown "agreements to provide polybutylene systems and the components thereof and through contractual arrangements and joint promotional activity for marketing the polybutylene systems . . . ." (Second Amended Compl. ¶ 61.)

Second, plaintiff has not plead an "enterprise" that is "separate and apart" from the pattern

of racketeering activity.[11]  See Elliot v. Foufas, 867 F. 2d 877, 881 (5th Cir. 1989) ("[T]he plaintiff must plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts").  Rather, plaintiff merely alleges that the enterprise consists of defendants' sale and marketing of their products, and the alleged pattern of racketeering activity consists of defendants' sale and marketing of their products. (Second Amended Compl. ¶¶ 61, 63-65.)  Thus, the alleged enterprise and the alleged pattern of racketeering activity are not separate and apart, but rather are identical.

Third, the "enterprise" plead by plaintiff also fails because there is not a sufficient distinction between the RICO "enterprise" and the RICO "persons."  See, e.g., In re Burzynski, 989 F.2d at 742-43; Crowe v. Henry, 43 F.3d 198, 206 (5th Cir. 1995) (same).  Indeed, plaintiff's definition of "enterprise" and "persons" is exactly the same -- namely, all of the defendants. Accordingly, plaintiff simply does not, as he must under § 1962(c), set forth any factual support for the allegations that the "enterprise" is distinct from the RICO persons.[12]

Finally, when plaintiff alleges a de facto enterprise (as plaintiff does here), plaintiff must show that there is a hierarchical or consensual governance structure so as to create an "enterprise," as opposed to a mere conspiracy.  Crowe, 43 F.3d at 205; Delta Truck & Tractor,

---

[11]      See, e.g., Calcasieu Marine Nat'l Bank v. Grant, 943 F.2d 1453, 1462 (5th Cir. 1991) (failure to plead enterprise separate and apart from pattern); Old Time Enters. v. International Coffee Corp., 862 F.2d 1213, 1217 (5th Cir. 1989) (same); Atkinson v. Anadarko Bank and Trust Co., 808 F.2d 438, 441 (5th Cir. 1987).

[12]      While the Fifth Circuit recently ruled that an individual can be both a member of an association-in-fact enterprise and a RICO "person", the court noted specifically that "there is a distinction when a corporation has been alleged as both a RICO defendant and a RICO enterprise." St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 447 (5th Cir. 2000) (emphasis added).

855 F.2d at 243 (same). Accordingly, plaintiff's conclusory allegation that an entire industry is an enterprise without any description of how it is run as an enterprise is legally insufficient.[13]

### 5. Plaintiff Has Failed To Plead A Pattern Of Racketeering Activity

Plaintiff has further failed to plead a civil RICO claim, as plaintiff has not alleged a pattern of racketeering against Celanese -- an essential element of a civil RICO claim.

First, it is beyond dispute that plaintiff must allege two predicate acts which form a pattern of racketeering activity. 18 U.S.C. §1961(5); Sedima, 473 U.S. at 508 (a pattern of racketeering activity requires proof of violations of at least two predicate offenses); GICC Capital Corp. v. Tech. Fin. Group, 67 F.3d 463, 465 (2d Cir. 1995) (same). As shown above, mail and wire fraud are the only predicate acts alleged here, but plaintiff has failed to plead that Celanese engaged in even one specific act of mail or wire fraud -- much less a pattern of mail or wire fraud.

Second, plaintiff is also required to establish that the predicate acts relate to each other as part of a common plan. See, e.g., Sedima, 473 U.S. at 508; see also GICC Capital Corp., 67 F.3d at 465 ("[the plaintiff] must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity"). Unable to plead even a single predicate act, plaintiff plainly cannot show a plan of related acts in either his RICO Statement or complaint.

---

[13]  In addition, under Section 1962(c), in order to conduct or "participate, directly or indirectly, in the conduct of [the] enterprise's affairs . . ., [as prohibited by §1962(c)]," one must participate in the operation or management of the enterprise itself. Reves v. Ernst & Young, 507 U.S. 170, 179, 113 S. Ct. 1163, 1170 (1993). No facts are plead as against Celanese to satisfy this requirement.

**6.    Plaintiff Concedes, As He Must, That He Cannot State An "Investment Injury" Claim**

Despite alleging an "investment injury" claim under 18 U.S.C. Section 1962(a) in his complaint (Second Amended Compl. ¶¶ 578-73), plaintiff now concedes that "he do[es] not allege a violation of 18 U.S.C. § 1962(a) for which [he is] seeking damages". (RICO Statement at 39.)

Assuming arguendo that plaintiff had not conceded that he could not assert an "investment injury" claim, such a claim would be subject to dismissal because, among other things, the alleged "investment injury": (i) results merely from the purported reinvestment of racketeering income into the RICO enterprise, and (ii) is not separate and distinct from any injuries allegedly caused by the predicate racketeering activity. See Fogie v. Thorn Americas, Inc., 190 F.3d 889, 896 (8th Cir. 1999) (discussing the requirement of a separate and distinct injury); Vemco, Inc. v. Camardella, 23 F.3d 129, 132-33 (6th Cir. 1994) (allegations that racketeering income was "used, directly or indirectly, in the operation of the enterprise" insufficient to state a claim under § 1962(a)); Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188-89 (3d Cir. 1993) ("'If plaintiffs' reinvestment injury concept were accepted, almost every pattern of racketeering by a corporation would be actionable under § 1962(a) and § 1962(c) would become meaningless'") (citation omitted).

**7.    Plaintiff Has Failed To Plead Properly A RICO Conspiracy Claim**

Under established law, in order to plead a RICO conspiracy claim, plaintiff must plead "specifics as to the details of the alleged conspiracy." Miranda v. Ponce Fed. Bank, 948 F.2d 41, 48 (1st Cir. 1991). See also Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1140-41 (5th Cir. 1992).

Here, plaintiff fails in his complaint and his RICO Statement to allege any agreement or

17

promotional activity by Celanese to commit even one act of mail or wire fraud against plaintiff or any other homeowner. To the contrary, plaintiff's only allegations against Celanese consist in total of a single letter allegedly sent to a representative of Shell (a co-defendant here) enclosing a bulletin concerning the properties of Celanese's raw material Celcon, and three other letters from Celanese to manufacturers which are not parties to this lawsuit. (Second Amended Compl. ¶ 63.) As such, plaintiff has not shown any specific facts concerning any agreement by Celanese to engage in any racketeering activity. See Tel-Phonic Servs., 975 F.2d at 1140 (holding that plaintiffs' RICO conspiracy claims were properly dismissed by district court for failure to plead with specificity any agreement to engage in racketeering activity); Miranda, 948 F.2d 41, 48 (1st Cir. 1991) (same); Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990) (affirming dismissal of RICO claims where conspiracy allegations were conclusory).

Moreover, a § 1962(d) conspiracy claim cannot lie where, as here, plaintiff cannot plead an underlying substantive racketeering claim. See Howard v. America Online, 208 F.3d 741, 751-52 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO"). As demonstrated previously (see supra pp. 7-17), plaintiff does not, as he cannot, plead any underlying violations necessary to state a RICO claim predicated upon alleged mail or wire fraud.

**B.      The Court Should Dismiss Plaintiff's Claim For False**
**Advertising Or Promotion Under Section 43(a) Of The Lanham Act**

Plaintiff has attempted to allege a claim for false advertising or promotion under Section

43(a) of the Lanham Act.  (Second Amended Compl. ¶¶ 93-101.)  However, assuming arguendo

(and contrary to fact) that plaintiff's allegations were true, they fail to state a claim against

Celanese for false advertising or promotion under Section 43(a) of the Lanham Act.

**1.      Plaintiff Lacks Standing To Prosecute A**
**Claim Under Section 43(a) Of The Lanham Act**

Under established law, consumers, such as plaintiff, lack standing to prosecute a claim for

false advertising or promotion under Section 43(a) of the Lanham Act.  See Proctor & Gamble

Co. v. Amway Corp., 242 F.3d 539, 561 (5th Cir. 2001) (explaining that Section 43(a) was

enacted to prevent "anti-competitive conduct in a commercial context"); Seven-Up Co. v. Coca-

Cola Co., 86 F.3d 1379, 1383 (5th Cir. 1996) (same).  Consumers lack standing because they "fall

outside the range of reasonable interests contemplated as protected by the false advertising prong

of Section 43(a) of the Lanham Act."  Serbin v. Ziebart Int'l Corp., Inc., 11 F.3d 1163, 1177 (3d

Cir. 1993).  As the Second Circuit in Colligan v. Activities Club of New York, Ltd., 442 F.2d 686

(2d Cir. 1971), explained:

> Congress' purpose in enacting § 43(a) was to create a special and limited unfair
> competition remedy, virtually without regard for the interests of consumers generally and
> almost certainly without any consideration of consumer rights of action in particular.  The
> Act's purpose, as defined in § 45, is exclusively to protect the interests of a purely
> commercial class against unscrupulous commercial conduct.

Id. at 692 (footnotes omitted).[14]

---

[14]      The Fifth Circuit's statements on this issue could not be more clear:  "most courts that
have addressed the issue agree that in light of the pro-competitive purpose language found in §
45, 'consumers fall outside the range of reasonable interests contemplated as protected by the

Moreover, a party lacks standing to prosecute a claim for false advertising or promotion under the Lanham Act where, as here, the parties are not commercial competitors. Seven-Up Co., 86 F.3d at 1383. See also Barrus v. Sylvania, 55 F.3d 468, 470 (9th Cir. 1995) ("[I]n a case . . . involving the so-called 'false advertising' prong of section 43, 15 U.S.C. § 1125(a)(1)(B), in order to satisfy standing the plaintiff must allege commercial injury based upon a misrepresentation about a product, and also that the injury was 'competitive,' i.e., harmful to the plaintiff's ability to compete with the defendant"); In re Ford Motor Co. Bronco II Prods. Liab. Litig., 1995 WL 491155, *2 (E.D. La. Aug. 15, 1995) ("the Lanham Act protects only commercial parties and '[t]o be actionable, [the defendant's] conduct must not only be unfair but in some discernible way be competitive'") (citation omitted).

**2.    Plaintiff Has Not, As He Cannot, Identify Any False Or Misleading Representation Made By Celanese In Connection With Commercial Advertising Or Promotion Of Polybutylene Plumbing**

Assuming arguendo (and contrary to law and fact) that plaintiff had standing to prosecute a claim for false advertising or promotion under Section 43(a) of the Lanham Act, plaintiff's claim still fails as a matter of law. It is well settled that in order to state a claim under Section 43(a) of

---

false advertising prong of Section 43(a) of the Lanham Act.'" Seven-Up, 86 F.3d at 1383 (citations omitted). Further, the Fifth Circuit stated that "we have found no case which suggests that 'consumers' as such have standing under § 43(a)." Id. at 1383 n.5. Not surprisingly, given the clarity of the Fifth Circuit's and other federal circuit court's rulings in this area, district courts in this circuit have held uniformly that consumers lack standing under Section 43(a) of the Lanham Act. See Bacon v. Southwest Airlines Co., 997 F. Supp. 775, 781 (N.D. Tex. 1998) ("In light of the dicta in Seven-Up and the decisions of the other circuits that addressed this issue, the court holds that plaintiffs do not have a private right of action to bring a claim under [the Lanham Act] because they are consumers who are not even arguably engaged in any commercial activity that would be subject to competitive injury protected by the Lanham Act"); In re Ford Motor Co. Bronco II Prods. Liab. Litig., 1995 WL 491155, *2 (E.D. La. Aug. 15, 1995) ("the Lanham Act protects only commercial parties and '[t]o be actionable, [the defendant's] conduct must not only be unfair but in some discernible way be competitive'") (citations omitted).

20

the Lanham Act, the plaintiff must allege, among other things: (i) "detailed [and] specific factual assertions," (ii) which were false, and (iii) which were made in connection with commercial advertising or promotion of a particular product. Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc., 911 F.2d 242, 246 (9th Cir. 1990). See also Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 872 (3d Cir. 1992) ("plaintiff must assert in the first instance that a misleading message is conveyed"); Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 700-01 (5th Cir. 1981) (false advertising claim requires "an affirmative misrepresentation by the defendant . . . regarding the existence of certain qualities or characteristics that its goods do not in fact have"); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1139 (4th Cir. 1993) ("In order to state a proper claim for relief under § 43(a) of the Lanham Act, [the plaintiff] was required to point to some claim or representation that is reasonably clear from the face of the defendants' advertising or package inserts") (emphasis in original).

Here, plaintiff has not identified any specific representation, much less a false and misleading representation, made by Celanese in connection with commercial advertising or promotion of polybutylene plumbing. Accordingly, plaintiff has failed to state a claim for false advertising or promotion under Section 43(a) of the Lanham Act.

21

C.    **Plaintiff's Claim Against Celanese For Alleged Violation Of The Due**
      **Process Clause Of The United States Constitution Is Wholly Meritless**

Despite settled and controlling law to the contrary, plaintiff has attempted to create federal question jurisdiction by asserting a claim for alleged violation of the Due Process Clause of the United States Constitution.  (Second Amended Compl. ¶¶ 102-129.)  According to plaintiff's second amended complaint, plaintiff anticipates defendants may assert the preclusive effect of the final judgment in Cox as a bar to plaintiff's claims.  (Id. at 120.)  In response to this anticipated defense, plaintiff apparently may argue that his due process rights were somehow violated in the Tennessee action[15] (id. at ¶¶ 115, 117, 119), and requests that this Court "preliminarily and permanently enjoin [defendants] from directly or indirectly invoking [the Tennessee action] . . . to bar the Plaintiff and other members of the Class from asserting their rights to recover damages caused by the polybutylene system."  (Id. at ¶ 129.)  As demonstrated below, plaintiff's due process claim neither states a claim upon which relief can be granted, nor provides a basis for federal subject matter jurisdiction.

---

[15]    Much of plaintiff's complaint on this point is based on the erroneous claim that the Tennessee "Door Closing" statute or decisional law supposedly precluded the Cox court from exercising jurisdiction over the claims of non-resident class members.  (Id. at ¶¶ 105-111, 114, 116.)  While plaintiff's allegations are in any event insufficient to state a cause of action, plaintiff's allegations misstate the law of Tennessee.  See Davenport v. State Farm Mut. Auto Ins. Co., 756 S.W.2d 678, 684 (Tenn. 1988) (Tennessee courts may exercise jurisdiction over the claims of non-residents against foreign corporations for conduct that arises outside of Tennessee).  See also Walker v. Nationwide Ins. Co., 813 S.W.2d 135, 139 (Tenn. Ct. App. 1991) (same).  Tellingly, plaintiff cites no authority -- as none exists -- to support his argument.

1.    **A Private Citizen Such As Celanese Cannot Violate
The Due Process Clause Of The United States Constitution**

Plaintiff's due process claim is defective as against Celanese because Celanese -- a private

citizen which is not acting under color of state -- cannot violate plaintiff's due process rights.  See

Landry v. A-Able Bonding, Inc., 75 F.3d 200, 203 (5th Cir. 1996) ("In order to prove the

deprivation of a right protected by the Due Process Clause . . ., plaintiff must prove state action");

Bishop v. Federal Intermediate Credit Bank of Wichita, 908 F.2d 658, 663 (10th Cir. 1990) ("A

cognizable constitutional deprivation requires that the deprivation be the result of government

action"); Grossbard v. President Container, Inc., 840 F. Supp. 296, 298 (S.D.N.Y. 1993) ("The

Fifth and Fourteenth Amendments are implicated, and hence confer jurisdiction, only when

government action is involved"), aff'd, 41 F.3d 1501 (2d Cir. 1994) (citing Public Utils. Comm'n

v. Pollack, 343 U.S. 451, 461 (1952) and Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924

(1982)).

2.    **The Anti-Injunction Act Prohibits Plaintiff From
Seeking To Enjoin Defendants From Asserting
The Preclusive Effect Of The Final Judgment In Cox**

As is clear from plaintiff's second complaint, plaintiff seeks in this action to have this

Court enjoin defendants from asserting the preclusive effect of the final judgment in Cox as a bar

to plaintiff's claims.  (Second Amended Compl. ¶ 129.)  However, injunctions such as that sought

by plaintiff are prohibited by the Anti-Injunction Act.

Under the Anti-Injunction Act, as codified by 28 U.S.C. § 2283, "[a] court of the United

States may not grant an injunction to stay proceedings in a State court except as expressly

authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or

effectuate its judgments."  In Hill v. Martin, 296 U.S. 393 (1935), the Supreme Court explained

23

that:

> The prohibition of [section 2283] is against a stay of "proceedings in any court of a State." That term is comprehensive . . . It applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective. The prohibition is applicable whether such supplementary or ancillary proceeding is taken in the court which rendered the judgment or some other. And it governs a privy to the state court proceeding . . . as well as the parties of record.

Id. at 403. See also Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398

U.S. 281, 287 (1970) ("the prohibition of § 2283 cannot be evaded by addressing the order to the

parties or prohibiting utilization of the results of a completed state proceeding").

Here, the injunction sought by plaintiff would violate the clear dictates of the Anti-

Injunction Act, as plaintiff seeks to enjoin defendants from enforcing the final judgment in Cox,

which effectively approved the settlement of a nationwide class action relating to owners of

properties with polybutylene plumbing.

Moreover, plaintiff cannot seek to sidestep the Anti-Injunction Act by requesting that this

Court enjoin defendants, rather than the Tennessee state court, from enforcing the Cox judgment.

See In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 134 F.3d 133, 144

(3d Cir. 1998) ("The Anti-Injunction Act is 'an absolute prohibition against enjoining State Court

proceedings . . . This prohibition applies whether appellants seek to enjoin the parties to the action

or the state court itself"); Pelfresne v. Village of Williams Bay, 865 F.2d 877, 879 (7th Cir. 1989)

("the term 'proceedings' in the Anti-Injunction Act does not merely apply to ongoing litigation

before a state tribunal -- the Act also bars injunctive relief which prevents a victorious state

litigant from executing a state judgment"); Signal Properties, Inc. v. Farha, 482 F.2d 1136, 1137

(5th Cir. 1973) (same).

24

3. **Under The <u>Rooker</u>/<u>Feldman</u> Doctrine, The Court Lacks Subject Matter Jurisdiction To Review A Final State Court Judgment**

Contrary to established Supreme Court authority, the relief requested by plaintiff improperly requests that this Court review the final order and judgment approving the Tennessee nationwide class action settlement. (<u>See</u> Second Amended Compl. ¶¶ 112-125.)  In <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923) and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983), the Supreme Court held that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." <u>Feldman</u>, 460 U.S. at 482; <u>see also</u> <u>Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs</u>, 398 U.S. 281, 296 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions").

As the Fifth Circuit has explained, "[i]t is axiomatic that a federal district court, as a court of original jurisdiction, lacks appellate jurisdiction to review, modify, or nullify a final order of a state court." <u>Lampkin-Asam v. Supreme Court of Florida</u>, 601 F.2d 760 (5th Cir. 1979). <u>See also</u> <u>Snider v. City of Excelsior Springs, Missouri</u>, 154 F.3d 809, 811 (8th Cir. 1998) ("<u>Rooker-Feldman</u> precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding").

Accordingly, plaintiff cannot seek to have this Court review the final judgment in <u>Cox</u>. Rather, plaintiff's only avenue of appellate review would have been through the Tennessee state court system.[16] <u>Feldman</u>, 460 U.S. at 482; <u>see also</u> <u>Atlantic Coast Line</u>, 398 U.S. at 296 (party

---

[16]   Plaintiff failed to preserve his right to appeal the <u>Cox</u> final order and judgment.  Under Tennessee law, in order to preserve the right of appeal, a party must file a notice of appeal within 30 days of entry of a final order and judgment.  Tenn. R. App. P. 4.  Failure to file a notice of

25

may only "seek vindication of its federal right in the [state] appellate courts"); Corpus Christi

Taxpayer's Assoc. v. City of Corpus Christi, 858 F.2d 973, 976 (5th Cir. 1988) ("if the state trial

court erred . . ., the plaintiffs' remedy was to cure that error by appeal through the [state] courts

and ultimately to the United States Supreme Court, and not by an independent proceeding in the

federal district court").

The decision in Kamilewicz v. Bank of Boston Corp., 92 F.3d 506 (7th Cir. 1996), is

particularly apt.  There, like here, absent class members -- who were "[u]nhappy with the peculiar

result of [a] class action suit in Alabama" -- commenced an action in federal district court seeking,

among other things, to review a class action settlement which had been approved by a state court.

Id. at 508-09.  There, like here, the plaintiffs argued that the federal district court was authorized

to review the state court judgment because the state court allegedly had failed to comply with

procedural due process.  Id. at 509-10.  There, like here, the plaintiffs alleged that the state court

lacked personal jurisdiction over them because notice of the class action settlement and class

representation were allegedly inadequate.  Id.  The court in Kamilewicz made clear that the

Rooker/Feldman doctrine barred the federal district court from adjudicating plaintiffs' claims.  Id.

at 511-12.  See also Snider v. City of Excelsior Springs, Missouri, 154 F.3d 809, 812 (8th Cir.

1998) (absent class members in state court action barred from prosecuting their claims in federal

district court; "As we have held before in a case in which the plaintiffs alleged insufficient notice

in a state court action, there is no procedural due process exception to the Rooker-Feldman

rule").

---

appeal constitutes a waiver of the right to appeal absent unusual circumstances.  See First
National Bank of Polk County v. Gross, 912 S.W.2d 147 (Tenn. Ct. App. 1995).  Plaintiff filed no
such notice of appeal within the Tennessee state court system.

### 4. Plaintiff's Claim Against Celanese For Alleged Violation Of The Due Process Clause Fails To Provide A Basis For Federal Subject Matter Jurisdiction

The determination of federal subject matter jurisdiction is based only upon the "allegations of [plaintiff's] well-pleaded complaint." <u>Carpenter v. Wichita Falls Indep. School Dist.</u>, 44 F.3d 362, 366 (5th Cir. 1995) (citing <u>Louisville & Nashville R.R. Co. v. Mottley</u>, 211 U.S. 149 (1908)); <u>see also</u> <u>Merrell Dow Pharmaceuticals Inc. v. Thompson</u>, 478 U.S. 804, 813 (1986) ("the question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint'"). The Supreme Court has held squarely that "[t]he federal question 'must be disclosed upon the face of the complaint, unaided by the answer,'" and "'the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.'" <u>Phillips Petroleum Co. v. Texaco, Inc.</u>, 415 U.S. 125, 128 (1974) (quoting <u>Gully v. First Nat'l Bank in Meridian</u>, 299 U.S. 109, 112 (1936)).[17]

Accordingly, federal question jurisdiction is not created where a party asserts an anticipatory defense as the jurisdictional basis, much less where, as here, a party asserts a potential response to an anticipatory defense as a basis for federal subject matter jurisdiction. <u>Id.</u> at 128; <u>see also</u> 13B Wright, Miller & Cooper, <u>Federal Practice & Procedure: Jurisdiction</u> § 3566 at 84 (1984) ("the well-pleaded complaint rule bars plaintiff from invoking original federal jurisdiction by anticipating in the complaint a defense that defendant will raise").

---

[17]     <u>See also</u> <u>Lowe v. Ingalls Shipbuilding</u>, 723 F.2d 1173, 1178 (5th Cir. 1984) (federal question jurisdiction "is not satisfied merely because 'the dispute is in some way connected with a federal matter'") (citation omitted); <u>Pierre v. Jordan</u>, 333 F.2d 951, 958 (9th Cir. 1964) ("The fact that it may be necessary in the course of the litigation to construe or apply provisions of the Constitution is not sufficient to give application to 28 U.S.C. § 1331"); 14B Wright, Miller & Cooper, <u>Federal Practice & Procedure: Jurisdiction</u> § 3722 at 402-05 (1984) ("The federal claim or right that provides the predicate for [jurisdiction] must not be asserted as part of an issue that is merely collateral or incidental to a claim that is primarily based in state law").

The factual scenario faced by the Supreme Court in <u>Phillips Petroleum</u> is strikingly similar to this case. There, like here, the plaintiff attempted to create federal question jurisdiction by asserting that the defendant might raise a federal statute as a defense to plaintiff's state law claims. In finding subject matter jurisdiction lacking, the Supreme Court explained that "[t]o the extent that the [federal statutes] may bear on this action . . ., it is clear that their effect is no more than to overcome a potential defense to the action." <u>Id</u>. at 129. The conclusion should be the same here.[18]

**D.     The Court Should Not Exercise Supplemental Jurisdiction Over Plaintiff's Pendent State Law Claims**

The Court should not exercise supplemental jurisdiction over plaintiff's pendent state law claims, as it is well settled that where, as here, "all federal claims are dismissed or otherwise eliminated from a case prior to trial, [federal district courts should] decline to exercise jurisdiction over the pendent state law claims." <u>McClelland v. Gronwaldt</u>, 155 F.3d 507, 519 (5th Cir. 1998).

---

[18]    In strikingly similar decisions, other courts have routinely held that anticipatory defenses fail to provide a basis for subject matter jurisdiction. <u>See, e.g.</u>, <u>Merrell Dow Pharmaceuticals Inc. v. Thompson</u>, 478 U.S. 804, 808 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction"); <u>Ttea v. Ysleta Del Sur Pueblo</u>, 181 F.3d 676, 681 (5th Cir. 1999) ("Under the well-pleaded complaint rule, an anticipatory defense is insufficient for federal jurisdiction") (citing <u>Louisville & Nashville R.R. Co. v. Mottley</u>, 211 U.S. 149, 152 (1908)); <u>Lowe v. Ingalls Shipbuilding</u>, 723 F.2d 1173, 1178 (5th Cir. 1984) ("'[T]he mere presence of a federal issue, specifically the anticipation of a federal defense, would not permit invocation of federal-question jurisdiction'") (citation omitted); <u>Martin v. Drummond Coal Co., Inc.</u>, 756 F. Supp. 524, 526-27 (N.D. Ala. 1991) (no federal question jurisdiction where due process claim was added "in anticipation of a threatened defense of res judicata"); <u>Bender v. Prudential Ins. Co. of America</u>, 860 F. Supp. 803, 805 (M.D. Ala. 1994) ("whether a case is one arising under the constitution, laws, or treaties of the United States 'must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration . . . unaided by anything alleged in anticipation of what may occur later in the litigation, such as something 'alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose'") (quoting <u>Franchise Tax Board v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 9 (1983)).

28

See also Engstrom v. First National Bank of Eagle Lake, 47 F.3d 1459, 1465 (5th Cir. 1995); 28 U.S.C. § 1367(c).  Significantly, where, as here, "'the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction.'"  McClelland, 155 F.3d at 520 (quoting Carnegie-Mellon Univ. v. Cohill, 108 S. Ct. 618, 619 (1988)).

## III.

## CONCLUSION

For the foregoing reasons, Celanese respectfully submits that the Court should grant Celanese's Renewed Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

PATTON, TIDWELL & SANDEFUR LLP

Nicholas H. Patton
State Bar No. 15631000
Robert W. Schroeder III
4605 Texas Blvd.
Texarkana, Texas 75505
(903) 792-7080
(903) 792-8233 (facsimile)

29

OF COUNSEL:

Jerry L. Mitchell, Jr.
State Bar No. 14214650
James W. Bartlett, Jr.
State Bar No. 00795238
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
700 Louisiana, Suite 2200
Houston, Texas 77002
(713) 220-8800
(713) 222-0843 (facsimile)

Paul M. O'Connor III
Seth A. Moskowitz
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
(212) 506-1800 (facsimile)

Counsel for Defendants Hoechst Celanese
Corporation and Hoechst Celanese Chemical
Group, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via United States mail, postage prepaid, to all counsel of record on this _17_ day of April 2001.

| | |
|---|---|
| Mitchell A. Toups<br>Weller, Green, Toups<br>& Terrell, LLP<br>P.O. Box 350<br>Beaumont, Texas 77704 | James C. Ezer<br>Abbott, Simes, Knister & Kuchler<br>1360 Post Oak Boulevard<br>Suite 1700<br>Houston, Texas 77056 |
| Damon Young<br>Lance Lee<br>Young & Pikett<br>4122 Texas Boulevard<br>P.O. Box 1897<br>Texarkana, Texas 75504 | David T. Harvin<br>Daniel A. Hyde<br>Vinson & Elkins LLP<br>2300 First City Tour<br>1001 Fannin<br>Houston, Texas 77002-6760 |
| Kathleen Taylor Sooy<br>E. Duncan Getchell, Jr.<br>Robert L. Hodges<br>McGuire, Woods, Battle<br>& Boothe LLP<br>901 East Cary Street<br>Richmond, Virginia 23219 | James N. Haltom<br>Patton, Haltom, Roberts,<br>McWilliams & Greer, LLP<br>700 Hibernia National Bank Building<br>Texarkana, Texas 75504-1928 |